**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| THOMAS THOMAS, | ) | Case No.1:21-cv-02344-JRK |
| | ) | |
| Petitioner, | ) | JUDGE JAMES R. KNEPP II |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | JENNIFER DOWDELL |
| | ) | ARMSTRONG |
| WARDEN, NORTHEAST OHIO | ) | |
| CORRECTIONAL CENTER, | ) | |
| | ) | |
| Respondent. | ) | **REPORT & RECOMMENDATION** |

## I.  INTRODUCTION

Petitioner, Thomas Thomas ("Mr. Thomas"), seeks a writ of habeas corpus under 28 U.S.C. § 2254. (ECF No. 1). Mr. Thomas is serving a sentence of 25 years and six months for (1) two first-degree felony counts of rape in violation of R.C. § 2907.02(A)(2); (2) four third-degree felony counts of sexual battery in violation of R.C. § 2907.03(A)(5); and (3) one fourth-degree felony count of gross sexual imposition in violation of R.C. § 2907.05(A)(5).

Mr. Thomas asserts four grounds for relief. Respondent, Warden, Northeast Ohio Correctional Center ("Warden"), filed an answer/return of writ on June 8, 2022. (ECF No. 9). Mr. Thomas filed a traverse on November 30, 2023. (ECF No. 10). This matter was referred to me on September 2, 2022 under Local Rule 72.2 to prepare a report and recommendation on Mr. Thomas' petition. (*See* ECF non-document entry dated September 2, 2022). For the reasons set forth below, I recommend that Mr. Thomas' petition be DISMISSED. I further recommend that the Court not grant Mr. Thomas a certificate of appealability.

## II.  RELEVANT FACTUAL BACKGROUND

For purposes of habeas corpus review of state court decisions, a state court's findings

1

of fact are presumed correct and can be contravened only if the habeas petitioner shows, by clear and convincing evidence, that the state court's factual findings are erroneous. 28 U.S.C. § 2254(e)(1); *Moore v. Mitchell*, 708 F.3d 760, 775 (6th Cir. 2013); *Mitzel v. Tate*, 267 F.3d 524, 530 (6th Cir. 2001). This presumption of correctness applies to factual findings made by a state court of appeals based on the state trial court record. *Mitzel*, 267 F.3d at 530. The Ohio Court of Appeals for the Eighth Appellate District summarized the facts as follows:

{¶ 4} P.M. and S.M. are siblings and the daughters of A.M. ("mother") and step-daughters of Thomas. P.M. was born in 1994, and S.M. was born in 1992. Their other siblings are L.M., J.M ., A.T., Z.T., P.T., and B.T. Mother married Thomas in 2000. From August 2008 to April 2009, P.M. and S.M. lived in Euclid with Thomas and their siblings. P.M. testified that when she first met Thomas, he treated her like she was his own child. The family would spend time together and he would buy her clothes, shoes, and other things she wanted. P.M. testified that Thomas treated her better than he treated her siblings.

{¶ 5} Thomas began molesting P.M. when she was 12 years old. P.M. did not tell anyone about the abuse because she was scared. At that time, they lived in Maple Heights, Ohio. Thomas would vaginally rape her "almost everyday" in the "bedroom with the bed in it." When P.M. was 13, she went with her mother and A.T., J.M., Z.T., and S.M. to Alabama to take care of her great grandmother, while Thomas stayed in Maple Heights. When she returned to Ohio in August 2008, the entire family moved to Euclid. P.M. testified that when they lived in Euclid, Thomas would vaginally rape her while she was asleep. P.M. testified that this happened over 30 times. It happened during week nights when they were in bed. Thomas also touched P.M.'s chest three times and tried to put his penis into her mouth.

{¶ 6} P.M. further testified that when she came back from Alabama, Thomas raped her in the first room of the Euclid home. On another occasion, P.M. was sleeping in bed with Z.T. Thomas moved Z.T. to the other side of the bed, laid behind P.M., and vaginally raped her.

{¶ 7} In early April 2009, C.J., P.M.'s cousin, stayed over P.M.'s house during spring break. P.M. showed her texts from Thomas on her phone, telling P.M. to wear the short-shorts he bought her and to save him a spot in bed. One night, C.J. observed Thomas lie down next to P.M. while she was asleep and put his hand into P.M.'s pants. C.J. tried to wake P.M. up, but her attempts were unsuccessful. The next morning she confronted Thomas. She asked him, "Is it true you be touching [P.M.]?" Thomas appeared shocked and replied, "What you trying to do, get me to go to jail."

{¶ 8} On the morning of April 30, 2009, P.M. received a series of texts from Thomas stating, "Come in here and lay by me. * * * This will be the last time." "I really, really

need you to do this for me. I'll never ask you again, and if you want to do anything else, you will not have to do anything for it, Okay?" "Baby, please take off your jeans and lay back. I will do the rest. You do not have to move." She was in bed when she received these texts and Thomas was in another room. P.M. did not text him back, so he came into the bed with her and Z.T. She was in her clothes and was wrapped up in the covers. They did not speak, so Thomas left.

{¶ 9} P.M. then texted her boyfriend, B.H., that "My daddy said dis, 'Baby, please take off the jeans and lay back. I will do the rest. You do not have to move' " and "I really really need you to do this for me. I will never ask you again. And if you want to do anything else you can."

{¶ 10} That afternoon, when P.M.'s siblings came home from school, P.M. showed L.M., B.H., B.T., and P.T. the texts. Her brothers suggested that she text Thomas "[s]ince I didn't do what you asked me to do this morning, did you want me to do it tonight[?]" Thomas responded, "Yes." B.H. and her brothers then decided to confront Thomas when he came home from work that night. B.T. and B.H. spoke with Thomas outside the house.

{¶ 11} B.H. testified that when they initially confronted him, Thomas said that the texts did not mean anything and that he wanted to walk B.H. home. While they were walking, B.H. showed Thomas the texts from P.M. on his phone. Thomas told B.H. that he was sorry and that it was never going to happen again. He admitted that he had sex with P.M. As Thomas walked away, B.H. called 911. The police arrived and spoke with Thomas, B.H., P.M., and her siblings.

{¶ 12} S.M. testified that she spoke to the police on May 1, 2009, and told them that when Thomas hugged her, he would rub her buttock and that made her feel weird.

{¶ 13} Detective Daniel Novitski ("Novitski") of the Euclid Police Department testified that he handled the investigation of this case. When he interviewed Thomas, Thomas admitted to sending the text messages to P.M. When asked by Novitski what he meant by the messages, Thomas replied, "Nothing. It was stupid." Thomas denied having sex with P.M.

{¶ 14} P.M.'s case was referred to Lauren Krol ("Krol"), a social worker with the Cuyahoga County Department of Children and Family Services. She provides services as referrals for families and investigates sexual abuse. She spoke individually with each of the children, including P.M. and S.M. As a result of her investigation, she determined that abuse was indicated.

{¶ 15} Vicki Leonardi ("Leonardi"), a counselor employed with Mental Health Services, testified that she received a referral from Krol regarding P.M. She diagnosed P.M. with post-traumatic stress disorder. P.M. was withdrawn, hypervigilant, and antisocial. P.M. was in treatment with Leonardi from May 2009 to November 2009.

{¶ 16} Gail McAliley ("McAliley"), a pediatric nurse practitioner, received a referral from Krol and completed a medical evaluation on P.M. P.M. told her that Thomas

3

would put his penis in her vagina while they laid in bed. P.M. would sleep in her jeans and wrap herself up in a blanket so that Thomas would leave her alone.

{¶ 17} Thomas testified in his own defense. He admitted to sending P.M. a text message telling her to "remove her jeans, * * * lay back, and that [he] would do the rest." He testified that when B.H. showed him the texts, he admitted to sending them. He testified that he did not have sex with P.M., and that he has not had a sexual relationship for quite some time because he is impotent. Thomas further testified that he sent the texts to P.M. as a way to release his sexual urges. On cross-examination, Thomas admitted that he was never diagnosed as impotent.

(ECF No. 9-2, Exhibit 13); *State v. Thomas*, No. 94492, 2011 WL 550130, 2011-Ohio-705 (8th Dist. Feb. 17, 2011).

## III. PROCEDURAL HISTORY

### A. <u>State Court Conviction</u>

On May 20, 2009, Mr. Thomas was indicted in the Cuyahoga County Court of Common Pleas on: (1) ten first-degree felony counts of kidnapping with a sexual motivation specification in violation of R.C. §§ 2905.01(A)(4) and 2941.147(A); (2) ten first-degree felony counts of rape in violation of R.C. § 2907.02(A)(2); (3) ten third-degree felony counts of sexual battery in violation of R.C. § 2907.03(A)(5); and (4) one fourth-degree felony count of gross sexual imposition in violation of R.C. § 2907.05(A)(5). (ECF No. 9-2, Exhibit 1). On May 26, 2009, Mr. Thomas pled not guilty to all charges. (ECF No. 9-2, Exhibit 2).

On June 4, 2009, the State provided a bill of particulars. (CEF No. 9-2, Exhibit 3). On November 6, 2009, Mr. Thomas, through counsel, filed a motion to dismiss based on alleged violations of his statutory right to a speedy trial. (ECF No. 9-2, Exhibit 4). On November 12, 2009, the trial court denied Mr. Thomas' motion to dismiss. (ECF No. 9-2, Exhibit 6).

The case proceeded to a jury trial. On December 14, 2009, the jury acquitted Mr. Thomas on the kidnapping charges (Counts One to Ten), and eight of the rape charges (Counts Thirteen to Twenty). (ECF No. 9-2, Exhibit 9). The jury convicted Mr. Thomas of the

remaining rape counts (Counts Eleven and Twelve), all ten sexual battery counts (Counts Twenty-One to Thirty), and the gross sexual imposition count (Count Thirty-One). *Id*. The trial court sentenced Mr. Thomas to a total of 25 years and six months in prison. *Id*.

### B.  Direct Appeal

On January 11, 2010, Mr. Thomas, through new appellate counsel, timely filed a notice of appeal to the Eighth District Court of Appeals. (ECF No. 9-2, Exhibit 10). On June 3, 2010, Mr. Thomas filed his appellate brief, raising the following assignments of error:

1. The appellant was denied due process of law when his conviction was based upon multiple, identical, undifferentiated counts of a single offense in violation of the Double Jeopardy Clause and the Fifth and Fourteenth Amendments to the United States Constitution and Section 16, Article I of the Ohio Constitution.

2. Appellant received ineffective assistance of counsel guaranteed by Article I, Section 10 of the Ohio Constitution and the Sixth and Fourteenth Amendment to the United States Constitution.

3. The trial court erred to the prejudice of appellant when it declared the alleged victim competent to testify.

4. The cumulative effect of the errors committed by the trial court and by appellant's trial counsel combined to deny appellant due process and a fair trial as guaranteed by the United States and Ohio Constitution.

5. The evidence was insufficient as a matter of law to support a finding beyond a reasonable doubt that appellant was guilty of rape and sexual battery.

6. The appellant's convictions for rape, sexual battery and gross sexual imposition were against the manifest weight of the evidence.

(ECF No. 9-2, Exhibit 11).

On February 17, 2011, the Eighth Appellate District affirmed in part and reversed in part. (ECF No. 9-2, Exhibit 13). The court held that there was insufficient evidence to support Mr. Thomas' convictions on six of the ten sexual battery counts, and therefore reversed and vacated those convictions. The court otherwise rejected Mr. Thomas' assignments of error. Mr. Thomas did not appeal from any portion of the Eighth Appellate District's decision.

On July 21, 2011, the trial court issued a new sentencing entry in light of the Eighth Appellate District's reversal of the six sexual battery convictions, against sentencing Mr. Thomas to a total term of 25 years and six months. (ECF No. 9-2, Exhibit 14). On August 22, 2011, Mr. Thomas, through new appellate counsel, filed a timely notice of appeal from the trial court's sentencing order. (ECF No. 9-2, Exhibit 15). On December 12, 2011, the Eighth Appellate District *sua sponte* dismissed Mr. Thomas' appeal for failure to file an appellate brief. (ECF No. 9-2, Exhibit 16). Mr. Thomas filed a motion to reconsider and reinstate his appeal, which the Eighth Appellate District granted on January 4, 2012. (ECF No. 9-2, Exhibits 17-18). In his appellate brief, Mr. Thomas raised the following assignment of error:

1.  The trial court erred when it failed to conduct a new sentencing hearing.

(ECF No. 9-2. Exhibit 19).

On June 14, 2012, the Eighth Appellate District affirmed Mr. Thomas' sentence. (ECF No. 9-2, Exhibit 21). On July 30, 2012, Mr. Thomas, through counsel, filed a notice of appeal to the Ohio Supreme Court. (ECF No. 9-2, Exhibit 22). In his memorandum in support of jurisdiction, Mr. Thomas raised the following proposition of law:

1.  When a trial court re-sentences a defendant who no longer stands convicted of the same offenses as at the original sentencing, the trial court must conduct a sentencing de novo.

(ECF No. 9-2, Exhibit 23). On October 24, 2012, the Ohio Supreme Court denied Mr. Thomas leave to appeal and dismissed the appeal as not involving any substantial constitutional question. (ECF No. 9-2, Exhibit 25).

### C.  Post-Conviction Petitions

On February 9, 2016, Mr. Thomas, acting *pro se*, filed a motion for leave to file a motion for a new trial pursuant to Ohio Criminal Rule 33. (ECF No. 9-2, Exhibit 26). In the motion, Mr. Thomas asserted that newly discovered evidence, in the form of an affidavit from

one of the alleged victims, P.M., demonstrated that he was innocent of the charges for which he had been convicted. On February 17, 2016, the trial court ordered the State to respond to Mr. Thomas' motion. (ECF No. 9-2, Exhibit 27). It is unclear whether the State responded to Mr. Thomas' motion, and it does not appear that the trial court ruled on it.

On August 8, 2016, Mr. Thomas, acting *pro se*, filed a petition to vacate or set aside his judgment of conviction pursuant to R.C. 2953.21. (ECF No. 9-2, Exhibit 29). It does not appear that the trial court ruled on Mr. Thomas' petition.

### D. <u>Federal Habeas Action</u>

On December 11, 2021, Mr. Thomas, acting *pro se*, filed his 28 U.S.C. § 2254 habeas petition. (ECF No. 1). Mr. Thomas' habeas petition raises four grounds for relief:

1. Ineffective assistance of counsel Article I, Section 10 of the Ohio Constitution and the Sixth and Fourteenth Amendment to the United States Constitution.

   <u>Supporting Facts</u>: Trial counsel's failure to object to victim impact evidence, trial counsel's failure to object to a witness statement, trial counsel's failure to read a police report provided to him by the state, trial counsel's improper questioning of a state's witness, trial counsel's failure to object to the indictment.

2. Due Process of law.

   <u>Supporting Facts</u>: I was denied due process of law because my conviction was based on multiple and identical and undifferentiated counts of a single offense in violation of the Double Jeopardy Clause, Fifth and Fourteenth Amendments of the United States Constitution.

3. Trial court error.

   <u>Supporting Facts</u>: Trial court erred to the prejudice of the accused when it declared the alleged victim competent to testify.

4. Insufficient evidence as a matter of law.

   <u>Supporting Facts</u>: The evidence was insufficient as a matter of law to support a finding beyond a reasonable doubt that the accused was guilty of rape & sexual battery.

*Id*. The Warden filed an answer/return of writ on June 8, 2022. (ECF No. 9). Mr.

Thomas did not file a traverse, so on October 30, 2023, I entered an order establishing a final deadline of December 29, 2023 for him to do so. (*See* ECF non-document entry dated October 30, 2023). Mr. Thomas filed his traverse on November 30, 2023. (ECF No. 10).

## IV. STANDARDS OF REVIEW AND GOVERNING LAW

### A. <u>Jurisdiction</u>

28 U.S.C. § 2254(a) authorizes this court to entertain an application for a writ of habeas corpus on "behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A state prisoner may file a § 2254 petition in the "district court for the district wherein such person is in custody or in the district court for the district within which the State court was held which convicted and sentenced him[.]" 28 U.S.C. § 2241(d). The Cuyahoga County Court of Common Pleas sentenced Mr. Thomas, and the Court takes judicial notice that Cuyahoga County is within this Court's geographic jurisdiction. Accordingly, this Court has jurisdiction over Mr. Thomas' § 2254 petition.

### B. <u>AEDPA Standard of Review</u>

28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), provides in relevant part as follows:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

    (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

    (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

(*Id.*)

To determine whether relief should be granted, the Court must use the "look-through" methodology and look to the "last explained state-court judgment" on the petitioner's federal claim. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991) ("The essence of unexplained orders is that they say nothing. We think that a presumption which gives them no effect—which simply 'looks through' them to the last reasoned decision—most nearly reflects the role they are ordinarily intended to play."); *Wilson v. Sellers*, 138 S. Ct. 1188, 1193 (2018) ("We conclude that federal habeas law employs a 'look through' presumption.").

"A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.'" *Otte v. Houk*, 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)). "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [the Supreme] Court's decisions." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quotations and citations omitted). "[U]nder the unreasonable application clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). "The unreasonable application clause requires the state court decision to be more than incorrect or erroneous"—it must be "objectively unreasonable." *Id.*

Under § 2254(d)(2), "when a federal habeas petitioner challenges the factual basis for a prior state court decision rejecting a claim, the federal court may overturn the state court's decision only if it was 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Burt v. Titlow*, 571 U.S. 12, 18 (2013)

(quoting 28 U.S.C. § 2254(d)(2)). A state court decision is an "unreasonable determination of the facts" under § 2254(d)(2) only if the trial court made a "clear factual error." *Wiggins v. Smith*, 539 U.S. 510, 528 (2003). A state court's factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance. *Wood v. Allen*, 558 U.S. 290, 301 (2010). Even if "[r]easonable minds reviewing the record might disagree" about the finding in question, "on habeas review that does not suffice to supersede the trial court's . . . determination." *Rice v. Collins*, 546 U.S. 333, 341-42 (2006). The prisoner bears the burden of rebutting the state court's factual findings "by clear and convincing evidence." *Burt*, 571 U.S. at 18 (citing 28 U.S.C. § 2254(e)(1)).

For state prisoners, the § 2254(d) standard "is difficult to meet . . . because it is meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). This is because, "[a]s amended by AEDPA, § 2254(d) is meant only to stop short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings." *Id.* at 103. "It preserves authority to issue the writ in cases where there is no possibility [that] fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents" and "goes no further." *Id.* Thus, in order to obtain federal habeas corpus relief, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*

## V. ANALYSIS

### A. Statute of Limitations

Although neither party has raised it, there is a threshold question regarding whether Mr. Thomas' habeas petition is timely. AEDPA imposes a one-year statute of limitations upon all applications seeking a writ of habeas corpus. See 28 U.S.C. § 2244(d)(1). Although the

statute of limitations is "not jurisdictional," it "effectively bars relief absent a showing that the petitioner's untimeliness should be excused based on equitable tolling and actual innocence." *Akrawi v. Booker*, 572 F.3d 252, 260 (6th Cir. 2009).

"[D]istrict courts are permitted, but not obliged, to consider, *sua sponte*, the timeliness of a state prisoner's habeas petition." *Day v. McDonough*, 547 U.S. 198, 209 (2006). District courts are "not required to doublecheck the State's math." *Id*. at 209-10. But "if a judge does detect a clear computation error, no Rule, statute, or constitutional provision commands the judge to suppress that knowledge." *Id*. at 210. However, while a federal court may raise AEDPA's statute of limitations *sua sponte*, "before acting on its own initiative, a court must accord the parties fair notice and an opportunity to present their positions." *Id*. The court must also "assure itself that the petitioner is not significantly prejudiced by the delayed focus on the limitation issue, and 'determine whether the interests of justice would be better served' by addressing the merits or by dismissing the petition as time barred." *Id*. (quoting *Granberry v. Greer*, 481 U.S. 129, 136 (1987)).

AEDPA's one-year limitations period begins to run from the latest of four dates:

(A)   the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B)   the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C)   the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D)   the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

Cases become final for purposes of § 2244(d)(1)(A) when the time to file a direct

appeal has expired, including the time to file a petition for a writ of certiorari to the United States Supreme Court. *See Lawrence v. Florida*, 549 U.S. 327, 333 (2007). The Ohio Supreme Court dismissed Mr. Thomas' appeal on October 24, 2012. (ECF No. 9-2, Exhibit 25). Mr. Thomas did not file a petition for a writ of certiorari, and did not file his habeas petition until December 2021, nine years later. On its face, Mr. Thomas' petition therefore appears to be untimely.

§ 2244(d)(2) provides that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2). Accordingly, "[t]he one-year period of limitations is tolled" while a properly filed application state post-conviction or other collateral review is pending. *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 459 (6th Cir. 2012) (quoting 28 U.S.C. § 2244(d)(2)).

In 2016, Mr. Thomas filed two post-conviction motions: (1) a motion for leave to file a motion for a new trial pursuant to Ohio Criminal Rule 33; and (2) a petition to vacate or set aside his judgment of conviction. (ECF No. 9-2, Exhibits 26, 29). It is well-settled, however, that statutory tolling under § 2244(d)(2) "does not . . . 'revive' the limitations period (i.e., restart the clock at zero); it can only serve to pause a clock that has not yet fully run." *Vroman v. Brigano*, 346 F.3d 598, 602 (6th Cir. 2003) (quotation omitted); *see also Keeling*, 673 F.3d at 462 ("Because the one year statute of limitations period had already expired when Keeling filed the motion, statutory tolling does not apply."). Because Mr. Thomas did not file his post-conviction applications until 2016, more than three years after his conviction became final, it is unlikely that either filing served to toll the statute of limitations.

Because Mr. Thomas' petition appears to be untimely, dismissal under *Day* is potentially appropriate even though the Warden has not raised the issue. However, *Day* does not obligate a federal court to dismiss a habeas petition based on a statute of limitations issue that the respondent has not raised. Given that the parties have not briefed the issue and Mr. Thomas' petition can be easily resolved on other grounds, I recommend that the Court proceed to the substance of Mr. Thomas' claims rather than dismissing his petition as barred by AEDPA's statute of limitations.

**B.  Procedural Default**

In his habeas petition, Mr. Thomas raises four grounds for relief: (1) ineffective assistance of trial counsel; (2) violation of his due process rights; (3) the trial court erred in determining that the alleged victims were competent to testify; and (4) the evidence was insufficient as a matter of law to support his convictions. The Warden argues that Mr. Thomas' petition should be dismissed in its entirety because Mr. Thomas failed to exhaust and procedurally defaulted each of his claims. I agree.

Under AEDPA, state prisoners must exhaust all possible state remedies, or have no remaining state remedies, before a federal court can review a petition for a writ of habeas corpus on the merits. 28 U.S.C. § 2254(b) and (c); *see also Rose v. Lundy*, 455 U.S. 509 (1982). This entails giving the state courts "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). In other words, "the highest court in the state in which the petitioner was convicted [must have] been given a full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). The exhaustion requirement, however, "refers only to remedies still available at the time of the federal petition." *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982). It "does not require

pursuit of a state remedy where such a pursuit is clearly futile." *Wiley v. Sowders*, 647 F.2d 642, 647 (6th Cir. 1981).

Procedural default is a related but "distinct" concept from exhaustion. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). It occurs when a habeas petitioner fails to obtain consideration of a federal constitutional claim by state courts because he failed to: (1) comply with a state procedural rule that prevented the state courts from reaching the merits of the petitioner's claim; or (2) fairly raise that claim before the state courts while state remedies were still available. *See generally Wainwright v. Sykes*, 433 U.S. 72, 80, 84-87 (1977); *Engle*, 456 U.S. at 125 n.28; *Anderson*, 460 F.3d at 806. In determining whether there has been a procedural default, the federal court again looks to the last explained state-court judgment. *Ylst*, 501 U.S. at 805; *Combs v. Coyle*, 205 F.3d 269, 275 (6th Cir. 2000). A claim is fairly presented when it has been asserted as a federal constitutional issue at every stage of the state court review process. *Thompson v. Warden, Belmont Corr. Inst.*, 598 F.3d 281, 285 (6th Cir. 2010); *Anderson*, 460 F.3d at 806.

The Sixth Circuit has developed a four-part test to determine whether a procedural default precludes a federal court from reaching a petitioner's claim: (1) whether there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with; (2) whether the state court "actually enforced" the state procedural rule; (3) whether the rule is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal claim; and (4) whether the petitioner can demonstrate cause for his failure to follow the procedural rule and actual prejudice from the alleged constitutional error. *Barton v. Warden, Southern Ohio Corr. Facility*, 786 F.3d 450, 464 (6th Cir. 2015) (quoting *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986)).

14

The Warden argues that Mr. Thomas has procedurally defaulted in two respects. First, the Warden argues that Mr. Thomas did not fairly present any of his claims through all levels of the state court review process. As the Warden concedes, Mr. Thomas raised each of those arguments in his original direct appeal to the Eighth Appellate District. (ECF No. 9-2, Exhibit 11). However, after the Eighth Appellate District affirmed in part and reversed in part, Mr. Thomas did not appeal any portion of the Eighth Appellate District's decision to the Ohio Supreme Court. After the trial court reimposed Mr. Thomas' sentence, Mr. Thomas again appealed, but challenged only whether the trial court was required to hold a new sentencing hearing following remand from the Eighth Appellate District. (ECF No. 9-2, Exhibit 19). After the Eighth Appellate District affirmed his sentence, Mr. Thomas filed an appeal to the Ohio Supreme Court, in which he again raised only the question of whether the trial court should have held a new sentencing hearing. (ECF No. 9-2, Exhibit 23).

Accordingly, Mr. Thomas has never presented to the Ohio Supreme Court any of the grounds for relief that he presents in his habeas petition. Mr. Thomas therefore failed to exhaust his claims. *See O'Sullivan v*, 526 U.S. at 845; *Williams v. Mitchell*, 792 F.3d 606, 613-15 (6th Cir. 2015) (holding that petitioner failed to exhaust claim where he did not fairly present it to the Ohio Supreme Court).

Mr. Thomas' failure to properly exhaust his claims is fatal to his petition. "[I]f an unexhausted claim would be procedurally barred under state law, that claim is procedurally defaulted for purposes of federal habeas review." *Alley v. Bell*, 307 F.3d 380, 385 (6th Cir. 2002). "In Ohio, a petitioner is not entitled to raise claims in post-conviction proceedings where those claims could have been raised on direct appeal." *Anderson*, 460 F.3d at 806. "Thus, if an Ohio petitioner failed to raise a claim on direct appeal, which could have been

raised on direct appeal, the claim is procedurally defaulted. " *Id.*; *see also Franklin v. Bradshaw*, 695 F.3d 439, 449 n.2 (6th Cir. 2012) ("a post-conviction petitioner in Ohio is not allowed to raise constitutional claims that could have been raised on direct appeal").

Mr. Thomas could have presented each of his claims on direct review, and in fact did present those claims to the Eighth Appellate District in his initial appeal. Because Mr. Thomas did not also fairly present those claims to the Ohio Supreme Court and can no longer do so, he has procedurally defaulted on them. *See Anderson*, 460 F.3d 807 (holding that petitioner procedurally defaulted claim because he failed to fairly present it to the Ohio Supreme Court); *Allen v. Mitchell*, 953 F.3d 858, 866 (6th Cir. 2020) (same); *Battiste v. Miller*, No. 1:17-cv-128, 2019 WL 6221477, at *12 (N.D. Ohio July 8, 2019), *report and recommendation adopted*, 2019 WL 4385735 (N.D. Ohio Sept. 13, 2019) ("because Battiste failed to fairly present his manifest-weight claim to the Ohio Supreme Court, and because state law no longer allows him to raise that claim, it is procedurally defaulted").

As the Warden correctly argues, Mr. Thomas also procedurally defaulted on his second ground for relief (due process) and third ground for relief (witness competency) because Mr. Thomas did not object to the alleged errors during the trial court proceedings. Ohio adheres to the "contemporaneous objection" rule, pursuant to which a defendant who fails to contemporaneously object to an alleged trial error waives appellate review of the issue unless the defendant demonstrates plain error. *See Williams v. Bagley*, 380 F.3d 932, 968 (6th Cir. 2004). As the Sixth Circuit has repeatedly held, "Ohio's contemporaneous objection rule is an independent and adequate ground to foreclose relief absent a showing of cause and prejudice." *White v. Mitchell*, 431 F.3d 517, 525 (6th Cir. 2005); *see also Wogenstahl v. Mitchell*, 668 F.3d 307, 335 (6th Cir. 2012) ("Failure to adhere to the 'firmly-established Ohio

contemporaneous objection rule' is 'an independent and adequate state ground' of decision.")

(quoting *Keith v. Mitchell*, 455 F.3d 662, 673 (6th Cir. 2006)).

I agree with the Warden that the Eighth Appellate District enforced the contemporaneous objection rule here with respect to Mr. Thomas' second and third grounds for relief. (*See* ECF No. 9-2, Exhibit 13) (limiting review to plain error with respect to due process and witness competency arguments). Mr. Thomas then failed to appeal the Eighth Appellate District's decision to the Ohio Supreme Court, leaving the Eighth Appellate District's ruling as the last reasoned decision on the issue. *See Ylst*, 501 U.S. at 805. It is well-settled that an Ohio court enforces the contemporaneous objection rule for purposes of *Maupin* when it conducts plain error review on appeal. *See Wickline*, 319 F.3d at 823 n.5 ("The Ohio Supreme Court's review for plain error constitutes enforcement of this procedural rule, which this court has recognized as an adequate and independent state ground barring federal habeas review."). Mr. Thomas therefore procedurally defaulted on his second and third grounds for relief on this basis as well.

Mr. Thomas' procedural default can be excused if he demonstrates either: (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law;" or (2) "failure to consider the claim will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). In his traverse, Mr. Thomas states that his appellate counsel in his second appeal failed to raise any of the errors relevant to this proceeding in the Ohio Supreme Court. (ECF No. 10, PageID # 1178). Mr. Thomas also states that he never asked his appellate counsel to represent him in an appeal to the Ohio Supreme Court and that appellate counsel did so without Mr. Thomas' knowledge. *Id*.

I will construe Mr. Thomas' argument as an argument that he received the ineffective

assistance of appellate counsel. Ineffective assistance of appellate counsel can constitute cause to excuse a procedural default. *See Hodges v. Colson*, 727 F.3d 517, 530 (6th Cir. 2013). "However, 'an ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted.'" *Id*. (quoting *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000)). Mr. Thomas never presented a claim of ineffective assistance of appellate counsel to the Ohio courts, and has therefore procedurally defaulted on any such claim. As a result, Mr. Thomas cannot use any alleged ineffective assistance of appellate counsel to excuse his procedural default. *See Seymour v. Walker*, 224 F.3d 542, 550 (6th Cir. 2000) ("the allegedly ineffective assistance of [petitioner's] appellate counsel cannot be considered to be cause for [his] procedural default, because that claim of ineffectiveness was not properly presented to and ruled on by the Ohio courts"). I therefore recommend that the Court dismiss Mr. Thomas' petition in its entirety because his claims are procedurally defaulted.

## VI. RECOMMENDATION REGARDING CERTIFICATE OF APPEALABILITY

### A. <u>Legal Standard</u>

As amended by AEDPA, 28 U.S.C. § 2253(c)(1) provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability. The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue. Rather, the courts that have considered the issue have concluded that "[a] 'substantial showing' requires

the applicant to 'demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further.'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996)). The statute requires that certificates of appealability specify which issues are appealable. 28 U.S.C. § 2253(c)(3).

Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254. "If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." *Id.*; see also 28 U.S.C. § 2253(c)(3) ("The certificate of appealability under [§ 2253(c)(1)] shall indicate which specific issue or issues satisfy the showing required by [§ 2253(c)(2)]."). In light of the Rule 11 requirement that the court either grant or deny the certificate of appealability at the time of its final adverse order, a recommendation regarding the certificate of appealability issue is included here.

### B.  **Analysis**

Mr. Thomas has not made a substantial showing of a denial of a constitutional right for the reasons set forth above. Because jurists of reason would not find these conclusions debatable, I recommend that no certificate of appealability issue in this case.

## VII. RECOMMENDATION

For the foregoing reasons, I RECOMMEND that the Court DISMISS Mr. Thomas' petition for a writ of habeas corpus under 28 U.S.C. § 2254.  I also recommend that the Court not grant him a certificate of appealability.

Dated:  May 15, 2024

*/s/ Jennifer Dowdell Armstrong*
Jennifer Dowdell Armstrong
U.S. Magistrate Judge

## NOTICE TO PARTIES REGARDING OBJECTIONS

Local Rule 72.3(b) of this Court provides:

**Any party may object to a Magistrate Judge's proposed findings, recommendations or report made pursuant to Fed. R. Civ. P. 72(b) within fourteen (14) days after being served with a copy thereof, and failure to file timely objections within the fourteen (14) day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure**. Such party shall file with the Clerk of Court, and serve on the Magistrate Judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. **Any party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.** The District Judge to whom the case was assigned shall make a <u>de novo</u> determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. The District Judge need conduct a new hearing only in such District Judge's discretion or where required by law, and may consider the record developed before the Magistrate Judge, making a determination on the basis of the record. The District Judge may also receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions.

*Id.* (emphasis added).

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the report and recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; a general objection has the same effect as would a failure to object. *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

Stated differently, objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, *2 (W.D. Ky. June 15, 2018) (quoting *Howard*). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).